

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE CO., an Iowa corporation, <br><br> Plaintiff, <br><br> v. <br><br> BRAVO FAMILY, L.L.C., a Michigan limited liability company; UBI INTERNATIONAL, INC., a Michigan corporation; REINHART INDUSTRIES, INC., a Michigan corporation; and BERKELEY MACHINE PRODUCTS, INC., a Michigan corporation, <br><br> Defendants. | No: 05 C 5464 <br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On September 23, 2005, the Plaintiff filed a one-count Complaint against the Defendants – Bravo Family, L.L.C; UBI International, Inc.; Reinhart Industries, Inc.; and Berkeley Machine Products. The Complaint is an action on a Note and related documents signed and issued to Plaintiff by Defendants and another corporation, Uni Boring, who has since declared bankruptcy and is not a party to this suit. The Plaintiff seeks to collect in excess of $17 million against the Defendants. The Defendants have admitted execution of the documents in question – the Note, as well as the Loan Agreement pursuant to which the Note was issued, and the three amendments to the Loan Agreement – but have raised numerous affirmative defenses. Currently before the Court is the Plaintiff's, Transamerica Life Insurance Co.'s (f/k/a PLF Life Insurance Company), Motion for Summary Judgment.

# FACTS

Uni Boring is a supplier of prototype and production machining services to the automotive industry. One of Uni Boring's creditors is the Plaintiff, Transamerica. On December 26, 2000, the Plaintiff, along with Uni Boring, and the Defendants executed a Senior Subordinated Loan Agreement (the "Loan Agreement"). Through the Loan Agreement, the Plaintiff agreed to loan Uni Boring approximately $15 million. (Pl.'s 56.1 ¶ 4, 6).[1]

According to the Loan Agreement, obligations under the Agreement were due in full on December 26, 2007. (Loan Agreement, at § 2.2). The funds dispersed in accordance with the Loan Agreement were distributed to Uni Boring; none of the loan proceeds were distributed to any other entity, including the Defendants. (Defs' 56.1 ¶ 20). The Plaintiff, the Defendants, and Uni Boring then entered into a Consent, Waiver and First Amendment to Senior Subordinated Loan on December 30, 2003. (Pl.'s 56.1 ¶ 5). Also on December 30, 2003, the Defendants and Uni Boring executed and delivered to the Plaintiff a Senior Subordinated Promissory Note (the "Note") in the amount of $15 million. (Pl.'s 56.1 ¶ 7). The Plaintiff is the owner and is in possession of the Note, which has not been assigned, transferred or negotiated. (Pl.'s 56.1 ¶ 14).

---

[1] The undisputed facts, for the purposes of this motion, are taken from the Plaintiff's Local Rule 56.1(a) & (b) statements of material facts and exhibits ("Pl.'s 56.1") and the Defendants' Initial Disclosures ("Defs' 26(g)"). The Defendants failed to respond to some parts of the Plaintiff's 56.1 statement; and to the extent that the Plaintiff's factual allegations in the Plaintiff's Rule 56.1 statement were not properly denied, they are deemed admitted. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill., 2000).

On March 30, 2006, the Plaintiff, the Defendants, and Uni Boring agreed to amend the Loan Agreement and Note, as set forth in the Consent and Third Amendment to Senior Subordinated Loan Agreement and Amendment to Senior Subordinated Promissory Note. (Pl.'s 56.1 ¶ 8).

On June 9, 2005, Uni Boring filed for Chapter 11 bankruptcy under the United States Bankruptcy Code. (Pl.'s 56.1 ¶ 9). An Event of Default specified in Section 7.1(I) of the Loan Agreement occurred by reason of Uni Boring's commencement of a Chapter 11 action. (Pl.'s 56.1 ¶ 10; Loan Agreement, at § 7.1(I)). As a result of Uni Boring's declaration of bankruptcy, the Plaintiff notified the Defendants, in a letter dated Juuly 15, 2005, that the Plaintiff had accelerated the unpaid balance under the Note. (Pl.'s 56.1 ¶ 12).

Uni Boring, the recipient of the loan proceeds in the transaction at issue in this action, owned 100 percent of Defendants Reinhart, Berkeley and UBI; and Defendant Bravo Family is a holding company that holds assets in real estate and interests in operating companies, including Uni Boring. (Loan Agreement Schedules 4.10, 4.30)

No payments have been made on the Note. (Pl.'s 56.1 ¶ 13). As of December 1, 2005, there is a balance on the Note of a principal sum of $15,000,000.00 and accrued interest of $3,134,654.49. (Pl.'s 56.1 ¶ 15). The interest continues to accrue at a rate of $8,323.81 per day. (Pl.'s 56.1 ¶ 16). The Plaintiff has also incurred, and continues to incur, attorney's fees and costs. (Pl.'s 56.1 ¶ 17).

## **LEGAL STANDARD**

Summary judgment is appropriate under Rule 56 (c) when no genuine issue of material fact exists or when, drawing all factual inferences in favor of the nonmoving party, no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

One of the "principal purposes" of awarding summary judgment is to "isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court that there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson*, 477 U.S. at 254-56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

## ANALYSIS

The Plaintiff asserts that this is a simple case: The Note at issue in this case is a negotiable instrument. *See* Mich. Comp. Laws § 440.3104.[2] Because Defendants' signatures are not in dispute, the Plaintiff is entitled to recover and, concomitantly, to an entry of judgment in its favor merely by producing the Note. *Behrens v. Apessos*, 197 N.W.2d 886, 887 (Mich. Ct. App. 1972); Mich. Comp. Laws § 440.3308(2). The Plaintiff acknowledges that the Defendants have asserted several affirmative defenses but contends none is a valid defense to the Plaintiff's claim or prevents entry of summary judgment in its favor. The Defendants assert that there remain substantial questions of fact to be resolved related to their affirmative defenses.

*Consideration*

Defendant Bravo Family's affirmative defenses numbered 1, 2, and 3 and Defendants UBI, Reinhart, and Berkeley's affirmative defenses numbered 1 and 2 are based on the inadequacy, failure and/or lack of consideration. Simply put, the Defendants collectively allege that the Plaintiff's initial proposal concerning the Loan Agreement was to Uni Boring; the other Defendants were not contemplated in the original proposal or in the original discussions nor were any of the loan amounts distributed to the Defendants and that, thus, consideration is lacking. (*See e.g.,* Lewandowski Decl. ¶ 7).

Defendant Bravo Family asserts that the negotiations that occurred between Transamerica and Uni Boring focused solely on Uni Boring's ability to repay the obligation as ultimately set out in the Loan Agreement. (Lewandowski Decl. at ¶ 7). Defendant Bravo

---

[2] Both the Loan Agreement and the Note provide that they are governed by Michigan Law. (Pl.'s 56.1 ¶18).

Family's business or ability to repay the Loan Agreement was not discussed. (*Id.* at ¶ 8). Likewise, when Defendant Bravo Family's name was mentioned, its financial advisor, James Lewandowski, advised Transamerica that Defendant Bravo Family, while solvent, did not have any additional assets with which to satisfy additional financial obligations. Comerica Bank had a first mortgage on Defendant Bravo Family's parcel of real estate located at 2280 West Grand River in Howell, Michigan; and the real property had little remaining equity. (Lewandowski Decl. ¶ 9).

Collectively, the Defendants assert that at summary judgment, the Plaintiff bears the burden of establishing the adequacy of consideration, *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1988), and claim that the Plaintiff has not met this burden because the only reference in the Note regarding consideration is the mere boilerplate recital of consideration, "for value received."

The Plaintiff replies that the Defendants' consideration arguments fail and notes the Defendants wrongly use inadequacy, failure and lack of consideration interchangeably. The Plaintiff then addresses each type of consideration, separately.

With respect to inadequacy of consideration, the Plaintiff cites *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1555 (E.D. Mich. 1991), and other cases for the proposition that "[u]nder Michigan law, as a general rule, courts will not inquire into the adequacy of consideration. In Michigan, any consideration, however slight, is legally sufficient to support a promise." Therefore, under Michigan law, the adequacy of consideration is irrelevant to the

enforceability of this contract, the alleged inadequacy to which the Defendants point would be an insufficient basis upon which to deny summary judgment.

Second, the Plaintiff acknowledges the failure of consideration as a valid defense but asserts that the Defendants confuse failure of consideration with lack or want of consideration. The Plaintiff argues that failure of consideration is a defense based on the failure of one party to provide its promised performance (i.e., if plaintiff had not made the loan to Uni Boring). Because the Defendants never made such a claim, denial of summary judgment on this ground would be improper.

The Plaintiff points out that the Defendants' real argument is that there is a lack or want of consideration for its promise to pay, premised on their contention that, because the Defendants did not receive the loan proceeds, there was no consideration. The Plaintiff frames this discussion of the failure of consideration as follows: The loan was made to Uni Boring, and Uni Boring and the Defendants promised to repay it. Citing *Davis v. Yellow Mfg. Acceptance Corp.*, 242 F.2d 503, 505 (6th Cir. 1957), the Plaintiff asserts that a "promise is enforceable even though the consideration for it flows to one other than the promissor." The consideration for the Defendants' obligations under the Note and the Loan Agreement was the loan to Uni Boring because "[c]onsideration for a promise may inure to one other than the promissor." *Schofield v. Spilker*, 194 N.W.2d 549, 550 (Mich. Ct. App. 1971) (citation omitted). Thus, consideration was not lacking. Additionally, consideration was not lacking because the Defendants' interests were so inter-related to those of Uni Boring – Uni Boring owned 100 percent of Defendants Reinhart, Berkeley and UBI; and Defendant Bravo Family was a substantial shareholder in Uni Boring. The Loan Agreement, at Section 8.18, recognizes this inter-relation, providing:

> 8.18 <u>Interrelationship Among the Loan Parties</u>. Each Loan Party acknowledges that (a) the business operations of each Loan Party are interrelated and compliment (sic) one another, and that such entities have a common business purpose; and (b) to permit their uninterrupted and continuous operations, such entities now require the funds from Lender as set forth in the Senior Subordinated Loan Documents.

The Plaintiff has met its burden of establishing the adequacy of consideration.

Further, even were there was no consideration, the Defendants are accommodation parties. Section 8.16 of the Loan Agreement provides:

> Section 8.16 <u>Guaranty</u>. The effect of the joint and several obligations of the Loan Parties hereunder is that each Loan party hereby unconditionally and absolutely guarantees to Lender, irrespective of the validity, regularity or enforceability of this Agreement or to any other agreement, the full and prompt payment in full to Lender at maturity of all the obligations of the Loan Parties. The guaranty set forth in this Section 8.16 shall in all respects be continuing, absolute and unconditional and shall remain in full force and effect until the obligations of the Loan Parties have been fully repaid. The guaranty set forth in this Section 8.16 is an absolute and unconditional guaranty of payment and not of collectibility. THE GUARANTY OBLIGATION SET FORTH IN THIS SECTION 8.16 SHALL IN ALL RESPECTS BE IN FURTHERANCE, AND SHALL IN NO EVENT BE DEEMED IN LIMITATION, OF THE OBLIGATIONS OF EACH LOAN PARTY UNDER THIS AGREEMENT.

(Loan Agreement ¶ 8.16 at 42) (emphasis in original). "The obligation of the accommodation party may be enforced notwithstanding . . . whether or not the accommodation party receives consideration for the accommodation." Mich. Comp. Laws § 440.3419(2).[3]

---

[3] Defendant Bravo Family asserts that there is a factual issue as to whether they signed as a party guaranteeing collection and not payment. However, Section 3-419 (4) of the Michigan Uniform Code provides:
> If the signature of a party to an instrument is accompanied by words indicating unambiguously that the party is guaranteeing collection rather than payment of the obligation of another party to the instrument, the signor is obliged to pay the amount due on the instrument to a person entitled to enforce the instrument only if (i) execution of a judgment against the other party has been returned unsatisfied, (ii) the other party is insolvent or in an insolvency proceeding,(iii) the other party cannot be served with process, or (iv) it is otherwise apparent that payment cannot be obtained from

*Prematurity*

Defendant Bravo Family's affirmative defense numbered 5 and Defendants UBI, Reinhart, and Berkeley's affirmative defense numbered 5 are based on the Defendants' assertion that the Defendants are not liable until the maturity date under the Loan Agreement, which does not occur until 2007. Specifically, Defendant Bravo Family asserts that the Loan Agreement is ambiguous regarding whether the Defendants are primarily or secondarily liable on the Loan Agreement and Note. If the parties are guarantors, Defendant Bravo Family's liability on the Note is not triggered until the obligations of the primary obligators have been exhausted. Like the Defendant Bravo Family, Defendant UBI argues that they are not obligated on the Note because the stated maturity date, has not yet occurred. Defendant UBI's argument, however, differs from Defendant Bravo Family's in that Defendant UBI argues that the Note does not provide for acceleration in the event of a default and that, therefore, it is not due.

An Event of Default has occurred when Uni-Boring voluntarily sought bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. Paragraph 5 of the Note provides:

> 5. <u>Events of Default</u>. <u>Acceleration of Payments</u>. Under certain circumstances described in Article 7 of the Senior Subordinated Loan Agreement, the occurrence of an Event of Default may result in the acceleration of the Obligations hereunder and the same may thereupon become immediately due and payable.

(Note ¶ 5). Section 7.2(a) of the Loan Agreement provides that, if there is an Event of Default – which includes voluntary bankruptcy – the unpaid balance of the Note becomes immediately due and payable.

---

the other party.
MCLA 440.3-419 (4).

9

Further, even if the Loan Agreement were to be interpreted to mean that the Defendants' liability as guarantors thereunder is limited to repaying the loan at maturity, this is not a defense. Although the Plaintiff asserts no Michigan cases have interpreted the phrase "at maturity," numerous cases cited by the Plaintiff from other jurisdictions have held, or clearly indicate, that the plain and ordinary meaning of the phrase "at maturity" includes the act of a lender accelerating the indebtedness because of a default. Maturity "is defined in Black's Law Dictionary as 'the date at which an obligation such as the principal of a bond or note, becomes due.'" *Lynn v. Financial Solutions Corp.*, 173 B.R. 894, 900 (M.D. Tenn. 1994).

The Plaintiff also points out that the Defendants' liability as guarantors under Section 8.16 of the Loan Agreement is *in addition to* rather than *instead of* their liability as signers of the Note. In construing the facts in the light most favorable to the non-moving party, there is no material fact about whether the Defendants were considered obligors or guarantors. The Defendants signed the Note as makers. Thus, "no reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248.

*Failure to Name a Necessary Party*

Defendant Bravo Family's affirmative defense numbered 4 and Defendants UBI, Reinhart, and Berkeley's affirmative defenses numbered 3 and 6 are based on the allegation that the Plaintiff has failed to name all necessary parties by failing to name Uni Boring as a defendant. The Plaintiff alleges that Uni Boring is not a necessary party and need not be named because, in the Note, the Defendants jointly and severally agreed to pay the Plaintiff. Note § 8.17.

"[W]here liability is joint and several, the obligators may be proceeded against jointly and severally," *Badour v. Zifkin*, 292 N.W.2d 201, 204 (Mich. Ct. App. 1980). Thus, Uni Boring is not a necessary party and need not be joined in this action as a necessary party.

## CONCLUSION

For the foregoing reasons, the Court grants the Plaintiff's Motion for Summary Judgment.

Dated: June 28, 2006

JOHN W. DARRAH
United States District Court Judge